CITY OF WEST MEMPHIS *v.* WEST MEMPHIS POWER & WATER COMPANY.

4-5924 141 S. W. 2d 527

Opinion delivered May 27, 1940.

*Doyne Dodd* and *Frazer & Clifton,* for appellant.

*Chas. E. Sullenger* and *Alene Word,* for appellee.

HUMPHREYS, J. On May 14, 1930, appellant by ordinance granted to Charles E. Sullenger the right to erect poles and wires etc., on the streets of the town for the proper distribution of electric current in said town. The ordinance granted to Charles E. Sullenger and his assignees the exclusive privilege for the proper distribution of electrical current in said town for thirty years. Section "X" of the ordinance is as follows:

"Section X; In consideration of the granting of this franchise, the town of West Memphis, Arkansas, reserves

an option to purchase and take over said electrical transmission system at any time during the thirty year period, upon the payment to said grantee, his heirs, or assigns, the fair valuation of said electrical transmission system, based upon the cost of replacement only, and disregarding any value to be attached to said franchise. The said fair valuation to be determined by three competent engineers; one engineer to be selected by the governing officers of the town of West Memphis, Arkansas, one by the grantee, and the third to be selected by the two engineers appointed by the governing officers of the town of West Memphis and the grantee, his heirs or assigns.''

On March 3, 1936, the council of West Memphis passed a resolution to purchase the electrical transmission system of the West Memphis Power & Water Company (assignee of Charles E. Sullenger) under the terms of § X of the franchise and selected a competent engineer. Appellee, the assignee of Charles E. Sullenger, refused to select an engineer.

Appellant brought a suit in the chancery court of Crittenden county for a specific performance of the franchise contract under § X of the francise set out above alleging that it had performed its part of the contract and the refusal of appellee to appoint an engineer to value the electrical transmission system in accordance with said § X and prayed that the court determine the value of the electrical transmission system of appellee, based upon the cost of replacement only and disregarding any value to be attached to the franchise and to compel appellee to convey the electrical transmission system to appellant upon the payment by it of the value determined.

Appellee filed an answer denying that it had breached the terms of the franchise and that the city had the right to purchase the electrical transmission system under the provisions of the franchise. This cause was heard by the court in vacation on January 21, 1937.

Testimony was introduced on the issues joined by the complaint and answer as to the validity of the fran-

chise contract and the city's right to specific performance.

On June 18, 1937, the court entered a decree as follows: "That the plaintiff (appellant) is entitled to have this court determine and fix the fair valuation of said electrical transmission system of the West Memphis Power & Water Company in the city of West Memphis, Arkansas, based upon cost of replacement only and disregarding any value to be attached to any franchise, and to compel the defendant (appellee), West Memphis Power & Water Company, to convey its electrical transmission system in the city of West Memphis, Arkansas, to the plaintiff upon payment by the plaintiff to the defendant of the valuation fixed and determined."

In the decree a special master was appointed for the following purposes:

"1. The determination of such part of the property of the West Memphis Power & Water Company as comprises the electrical transmission system of the West Memphis Power & Water Company located within the city of West Memphis, Arkansas.

"2. The determination of the fair valuation of the electrical transmission system of the West Memphis Power & Water Company in the city of West Memphis, Arkansas, based upon cost of replacement only and disregarding any value to be attached to the franchise under which the West Memphis Power & Water Company operates in the city of West Memphis, Arkansas.

"The master, likewise, for the use of the court in finally disposing of this cause, will separately fix and determine the fair valuation of the property of the West Memphis Power & Water Company in the city of West Memphis, Arkansas, itemizing the same, based upon cost of replacement only and disregarding any value to be attached to the franchise under which the West Memphis Power & Water Company operates in the city of West Memphis, Arkansas, as follows:

"A. Beyond the walls of building or buildings housing the generating plant of the West Memphis Power

& Water Company and used in or for or as an incident to the transmission of electric current and power.

"B. Both beyond and within the walls of the building or buildings housing the generating plant of the West Memphis Power & Water Company and used in or for or as an incident to the transmission and generation of electric current and power."

On June 1, 1939, the master filed his report fixing the value of the entire electrical system of the West Memphis Power & Water Company as follows:

"Valuation outside generating plant........$ 51,880.00
Valuation of generating system................ 102,984.00
Total......................................$154,864.00"

The master made an abstract of the testimony which he says he considered relevant and filed it as a part of his report.

Both appellant and appellee filed exceptions to the master's report. The cause was heard by the chancellor on June 30, 1939, on the exceptions to the master's report and on the master's application for the allowance of compensation. Upon the hearing the court fixed the master's fee at $2,250. The court handed down the following opinion:

"1. The term 'electrical transmission system' used in the franchise included both the generating system and the transmission system of the defendant.

"2. The master's figures of $154,864 was a fair valuation of the property based on the cost of replacement.

"3. The above figure of $154,864 would bear interest from June 30, 1939, at 6 per cent.

"4. The master's fee was equally charged against the parties, and each party would pay the costs of taking its respective depositions."

After rendering the above opinion and on October 16, 1939, the court entered a final decree as follows:

"1. The fair valuation of the entire electric system of the West Memphis Power & Water Company at West

Memphis, based upon cost of replacement was fixed at $154,864, as of March 1, 1938.

"2. The electrical transmission system was held to mean the entire electric system of said power company, including the transmission system outside the buildings housing the generating plant of the company and the engines and all other electrical equipment within said buildings of the West Memphis Power & Water Company.

"3. The West Memphis Power & Water Company was specifically directed to execute and acknowledge and deliver to the city of West Memphis its entire electric system and a deed to one-half of the company's real estate in West Memphis, upon the payment by the city of the valuation of $154,864 plus 6 per cent., from June 30, 1939; and upon the payment of the amounts specified a writ of possession should immediately issue to the city.

"4. The cost of each party's depositions was charged against it. The master's fee was fixed at $2,250, and the fee and all other costs were divided equally between the parties.

"5. The determination of the value of any additions to the properties of the West Memphis Power & Water Company after March 1, 1938 (the date of the valuation figure of $154,864) was reserved until after the decree of the Supreme Court."

On October 16, 1939, both plaintiff and defendant prayed an appeal to the Supreme Court, which appeal was granted.

The main question presented on this appeal is whether the chancellor erred in holding that the term "electrical transmission system" used in § X of the franchise covered and included the generating system. The chancellor in holding that it did give a much broader meaning to the words "electrical transmission system" than he should. He construed the words as including the whole electrical plant of appellee. The words are plain and unambiguous and cannot be construed to in-

clude a generating system owned and operated by appellee to manufacture electricity or power. The contract did not grant appellee the authority to manufacture or generate electricity. Appellee was not required by the franchise contract to manufacture or generate its own electricity to be distributed over its electrical transmission system on the streets and alleys of the town. Under the franchise appellee could have obtained its electricity or power from any source it desired and it was not limited by the franchise to the production of same. The city certainly could not under § X be required to buy or purchase more than was granted to appellee under the franchise contract and all that was granted to it was the right to construct an electrical transmission system in the streets and alleys of the town for the purpose of transmitting electricity through and over same. We are of opinion that the words "electrical transmission system" mean nothing more nor less than a system through which electricity may be distributed from one person or place to another person or place and does not include the manufacture or production of the electricity or power.

Appellant, therefore under the franchise or contract was not required to buy more from appellee than the electrical transmission system when it exercised its option under § X of the contract. The contract did not require appellant to purchase when it exercised its option an expensive power plant from appellee.

The chancellor also erred in allowing interest on the value of the plant ascertained on the first day of March, 1938.

Appellee retained the possession of and operated the plant from and after that date and is still in possession thereof. We think the valuation on that date of the property outside the generating plant was in accordance with the weight of the evidence and the court should have rendered a judgment for that valuation of $51,880 with an order that same be paid immediately and that appellee be required to convey to appellant the electrical

transmission system consisting of everything except appellee's generating plant.

Of course appellee should pay appellant the depreciation on the electrical transmission system since that date.

The treasurer and general manager of appellee testified that the basis of depreciation used by the company on all of its properties was from 2 per cent. to 3 per cent. per annum.

W. D. Dickinson testified that the proper basis of the annual depreciation thereon lying outside of the generating plant was 4 per cent. annually. The most that appellee should claim for depreciation since March 1, 1938, would be 3 per cent. in view of this testimony. We think that would be a fair and equitable amount to be deducted annually from the amount of $51,880.

Appellee again argues that the appeal was not prosecuted in time and that same should be dismissed, but that question was settled by this court on the motion of appellee filed on February 7, 1940, to dismiss the appeal which motion contained every essential fact that is now set forth in the brief and argument of appellee. On February 19, 1940, this court denied the motion of appellee to dismiss the appeal and the order of the court became final as far as this case is concerned.

The decree of the chancery court is reversed and the cause is remanded with directions to enter a judgment in favor of appellee for $51,880 less 3 per cent. per annum for depreciation of the electrical transmission system since march 1, 1938, and order that appellee transfer the electrical transmission system to appellant upon payment of said amount. The judgment for costs in the lower court, including the master's fee, is affirmed. The costs of this appeal will be taxed against appellee. It is so ordered.

GRIFFIN SMITH, C. J., not participating.